Good morning. The first case is number 18-1242, Securities and Exchange Commission v. Guy Gentile. Mr. Staroselsky? Thank you, Your Honor. You may please support Daniel Staroselsky for the Securities and Exchange Commission. I'd like to reserve five minutes for rebuttal. Granted. Thank you. Thank you. It's important to put the legal issues that this appeal raises into the context of this case. We're on a motion to dismiss and our complaint clearly states a claim upon which injunctive rules can be granted. Can we resolve this without addressing the question of statutory construction around what it means to engage or be about to engage in acts or practices constituting a violation? Because if we're looking at the sufficiency of pleading as to that standard and whether that standard has been altered by COCASH, we haven't really had briefing on that specific issue as we have in another case pending involving the FTC that's also before this Court. Yes, Your Honor. And I'm aware of that case. The issue is raised there. I mean, my friend on the other side has chosen not to press that argument here. So the only – so they do not dispute that the about-to language is, as the Truman Institute and the Commonwealth of Chemical Opinion and this Court agreed in the Benaski case, is broad enough to encompass a situation where there's a reasonable likelihood of future violation. Their only argument is that, you know, the Court can impose injunctions based on reasonable likelihood of future violations, but only if sought within five years and not outside of five years. And that position doesn't make a ton of sense because whether you're suing five years, five months, five minutes after a violation, inquiry is a present one into the defendant's present capacity for wrongdoing and the risk that he poses. You know, Pastor, I can't understand why you have this case. And I'll tell you, because I don't know why this case wasn't brought to me. I mean, it doesn't make any sense. What was the issue? The issue is maintaining a relationship with a cooperator is a complicated enterprise, and we wanted to preserve that cooperation agreement and promote the proactive cooperation that he was engaged in. And I think it's actually useful to play out how this would have worked if we had filed a complaint while he was cooperating. I think if we had, we would have heard, certainly we would have at least heard arguments. Wait a minute, what makes you think that Mr. Gentile is likely to violate the law? He's cooperating with the government, you know, he's wearing a... Well, so you stay the civil case, right? So maybe you stay the civil case at that moment. That would be typical, right? The criminal usually drives the bus, right? You know, you could stay the civil case, but, you know, again, I just think the argument... I mean, not only could you, that would be typical, right? I mean, when I say the criminal case drives the bus, I mean, that's the standard operating procedure, right? I think generally that's true, and I don't think that's true in all cases, but generally that's true. But I think fundamentally you just have to take a step back and recall what the issue is in this case. But it does drive home whether we're really dealing here with something that poses a significant problem to the SEC, or whether this is an aberration. Because by bringing a timely action and staying, or even by diligently re-upping the tolling agreement, it seems like this issue could be avoided, and the five-year bar wouldn't come into play. You know, there were some tolling agreements in this case, and at some point we just were not able to negotiate another one, and we were just faced with the situation of, again, we have a cooperating agreement, and we want to be sensitive to that. But just taking a step back, I think it's important to remember what that issue is in this case. And I can understand her role, and frankly this is what the Supreme Court said in Kogash, that look, SEC, you screwed up, and so at this point it's just too late to try to reach into Mr. Gentile's pocket to take away money from him based on his past violations. I don't think it makes a ton of sense to say that solely because of the delay, you could be faced with a situation where a court of equity can be faced with a high likelihood of future violations. And no matter what that likelihood is... I mean, he was indicted, I mean, you had every sort of, it smells like that, you had every opportunity, he was indicted, right? But it never happened, it was never proven, so why should we tar him as a wrongdoer when you never proved that? We do not want to tar him as a wrongdoer. Well then why does the public need to be protected from him if he's not a wrongdoer? Your question goes to the heart of the problem here, that even if this court did not incite people on the broad issue, that the problem is we're on a motion to dismiss. And our complaint under this court's precedent in financia clearly states a claim upon which an injunctive release can be granted. So in terms of looking to the past, the reason you look to the past is because it's a proxy for future harm, or for the future risk. And here, recall, we're talking about criminal level violations, two separate multi-million dollar securities frauds that Mr. Gentile committed in a hot... How do we know he committed them? That's what I'm asking. You're telling us he committed them, you investigated him, you got convictions in plea agreements from a couple of his alleged co-conspirators, but you did nothing to prosecute him. And now you're asking us to assume that he's convicted of crimes that you had every opportunity to prosecute him for, and for whatever reason chose not to do so. We're asking for an opportunity to plead our case. We're asking the court to take as true the allegations in our complaint. And the allegations here, again, very serious allegations as to past violations. And we know that Mr. Gentile has a current opportunity to engage in securities violations. But doesn't that take us back to the standard and sufficiency of pleading? Because if you had pleaded factual allegations that supported an imminent, or certain, or near certain violation that was about to occur, then surely you'd have a basis for proceeding in court. But instead, the amended complaint here, like the original complaint, is devoted almost exclusively to recounting what happened in 2007 and 2008. And then arguing on the basis of propensity alone that there's now a reasonable likelihood to justify an injunction as a remedial matter. But because it seems so tied to the original violations, it raises the concern of it being instead punitive, right? You have to look to the past to try to make a judgment about the future. In terms of imminence, we're not reduced to a stage where all that we can see is essentially TROs. And the holding that we are would be very difficult to square with Banastia. The complaint in Banastia was filed, I think, more than a year after the violations had ended. There was no allegation that future violations by Mr. Banastia were imminent. Indeed, the district court in that case denied injunctive relief on the ground that Mr. Banastia was not currently engaged in the securities industry. We weren't interpreting penalties in 2462 there, and it's a case from 1980. We now have Kokesh talking about what could be viewed as an equitable remedy, that deterrence, if it is a part of the purpose, goes to punishment. So doesn't that change the landscape entirely? I don't think so, Your Honor. And I just appreciate an opportunity to talk about Kokesh. There's two things that Kokesh says. One is relevant to this appeal, and the other is not. Let me start with the relevant one, and that is exactly what Your Honor honed in on at the end. The Kokesh is responding to the reality that sanctions can have multiple purposes, and it can be hard to figure out what falls on which side of the line. And what the court did is it announced a test for determining what to do then. And it said, a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes as punishment. So what that means is, in order to understand what the remedy is, if you have to resort to some punitive goal in Kokesh's general deterrence, then that makes it a remedy. And more than that, it can't just be in sort of one-off cases. You have to identify a material body of case law that can only be explained by that punitive goal. Well, then why isn't this case answered by your brief? Because you say on page five of your brief that the defining and essential feature of injunctive relief is deterrence. Because deterrence here, I mean, it's all up in this number. Deterrence in the injunctive context is talking about forestalling future violations. And what Kokesh is talking about is deterrence of other general deterrence. And that's what the Eighth Circuit picked up on in the Collier decision. And so what the court would have to find in this case is that injunctions in the material universe of cases can only be explained by either general deterrence or some other punitive goal. And we submit that the case law, barely read, does not support that finding. You don't see cases in the injunctive context where a court is sort of on the fence about whether to order injunctive relief. It says, look, I don't know whether this defendant is likely to violate the law in the future. But I want to either send a message to others or label him a wrongdoer or what have you. You just don't see that. And that's a sharp contrast to what the Supreme Court in Kokesh, how it analyzed the disgorgement remedy. Because it said, look, look at SEC insider trading cases, which is a large swath of what we do. In those cases, for example, in SEC Contarinas, which the court highlighted. Mr. Contarinas is made to disgorge profits that never went to him personally. And the sole way of understanding why that happened is general deterrence. Or look at Tipper-Tippee cases. A tipper is liable for profits made by his tippee. Why? Solely because of the general deterrence. You just do not see that in the injunctive context. And you can't. Because the remedy has to be about this particular defendant. That's the only way to justify the remedy. If we're fortunate enough to prevail in this court and on remand, the district court were to say, well, I don't know whether Mr. Gentile is likely to violate the law. But you know what? Stealing money from investors is a bad thing. And I want to send a message. That would be an abuse of discretion. And that's why this solely test works very strongly in our favor. But how could barring him from an industry not be punitive, though? Aren't all the occupational license debarment cases typified by punitive sanction? So a very important point, Your Honor. It has to be, you have to look at it objectively, not subjectively. And objectively, again, the reason is to protect the investing public. The Supreme Court talked about that in the Hudson decision about the debarment from the banking industry. But doesn't the debarment label him a wrongdoer? I don't know what could more strongly label him a wrongdoer. It says you are not allowed to earn a living in this field. So a couple points. The debarment cannot be imposed to label him a wrongdoer. That simply cannot be the basis at all. But it's objective. We just agreed it's objective. So it doesn't matter what's in the commission's mind, what your intent is. I'm asking objectively. Once he's debarred, how is that not punitive under Kokush? Because you have to look at, you don't have to look at our motivations. Our motivations are irrelevant. You have to look at what a court would have to say. And a court cannot say I want to, you know. All right. How does a court enter into order saying you are debarred from this industry and you're not a wrongdoer? I mean, that's that seems fantastical. Right. I mean, the only reason to debar someone is because they're a wrongdoer. And you have a fear that they will continue to do wrong. Because, Your Honor, it's an objective test and it's about the purpose of the court, not the incidental effect. Again, very important to go back to Kokush. So the court, so then the court could have a purpose in mind of, look, Mr. Gentile, I don't have anything against you. This isn't about you. This is about the public. I just need to protect the public. The court has to find that there is a likelihood that unless Mr. Gentile is restrained from future violations, there is a likelihood that he will engage in future violations. But then it is about him. It's not just about protecting the public sort of as a generic matter. It's about the it's about protecting the public from someone who has been deemed by the court to be a wrongdoer. And that seems consummately punitive, doesn't it? Your Honor, the purpose is not to label him a wrongdoer. If that's an incidental effect, again, go back to Kokush. The Supreme Court went to great pains to emphasize that deterrence, and I was talking about deterrence of others, was not simply the incidental effect of this forgery, but was the primary purpose. And so in the injunctive context, you just can't have that. The court can't say, you know, the purpose here is to punish the defendant, to label him a wrongdoer, what have you. It has to be justified by, you know, the goal of preventing future harm. I thought your argument earlier was that it's a sole purpose test, not a primary purpose test. The sole purpose has to be remedial. And if the sanction is a permanent bar on someone's occupation, how does that not send, at least in part, a general deterrence message? Your Honor, it's very important what the Supreme Court said. The question is whether the sanction can only be explained as serving general deterrence. Counsel, I want to ask you something. Now, there's so many things going on here because we're dealing with one injunctive. But actually, one of the things that we're dealing with is that you're serving a wrong injunctive, and we're not trying to stop the wrong injunctive. I mean, you might say one is, but the other one is not. Yes, Your Honor. I'm happy to discuss both as the court would like. Do they rise and fall together? I don't think they necessarily rise and fall together. But I think if the court is able to distinguish between them on some ground that says one or the other is justified solely, or to understand what the injunction is, you have to resort to some general deterrence or some other punitive goal, then I suppose you could distinguish them. But what the court's precedent is, and the way that courts really handle both types of injunctions, is they understand that it's very different from a penalty determination. That's why the path violation alone is not sufficient. That's why you have to find a likelihood of future misconduct. On the penance, I'm sorry, Judge Greenberg. I just want to say this. You're serving a wrong injunctive. You seem to be penal because you have an obligation to obey the law when you're delivering an injunction. And I don't want to purpose-judge that you wouldn't be penal because you're already doing injunctions. But on the other hand, the most common shock of the injury, if you're dealing with a victim of a crime, you're dealing with a victim of a criminal offense. Your Honor, I think that's almost the way that actually the 11th Circuit was thinking about this issue in the Graham case. And, you know, Graham, as the court is aware, held that the scorchment is a penalty, but the court didn't really have any issue with affirming or ruling that injunctive relief is not covered by Section 2462. But the 11th Circuit requires more specificity in final judgment with respect to injunctive relief. And it seems like what it really has in mind is something that's very narrowly targeted. And the pending stock, the restraint on future pending stock offerings, would be something that I would think that even the 11th Circuit would find appropriately targeted. But... Yes, Your Honor. So we would have to show, number one, we would have to show, like I said, the past violations are a proxy, they're a bit predictive proxies. But we would have to show that material... Well, first you have to show past violations. You have to litigate the case that you've already been time-barred from litigating, for starters. Well, I mean, our position is that we're not time-barred, but... Well, but I thought you, I thought the criminal case was time-barred, wasn't it? The criminal case is time-barred. Yeah, right. And you've claimed in this case that he's committed past SEC violations, right? Well, and that he has a likelihood of... And that those are criminal, and that he's likely to do them again. Our complaint doesn't sort of hinge on the criminal case whatsoever. I mean... So there's no more overlap between the... To Judge Greenberg's point, you wouldn't try to prove that he committed any violations of the criminal laws? There'd be... Well, no, I mean, well, we prove civil violations. We prove violations of... I mean, it's litigated differently than a criminal case. But either way, whether it's, whether it would support criminal charges or civil charges, the predicate for your action for injunctive relief is that there were past violations of the securities laws. You would have to establish that as a basis, even to show the likelihood, right? Yes, Your Honor, and that's exactly what happened in Benastia, right? So that's... But in Benastia, there was already the enforcement action, right? The underlying... Here, there's been nothing as to the underlying violation. Liability. Liability. This is so... This is the inverse of Benastia. In Benastia, there was liability, and the issue was remedy. And the district court ignored the remedy, and this court reversed, saying, look, you can't just say the person's in a different occupation, so that's the end of the matter. Here, you haven't even proven civil liability. Well, that's what we want an opportunity to do, Your Honor. I mean, we filed a complaint. And you want to prove civil liability over something that happened well over five years ago. Yes, Your Honor. So you could sit and wait. You could have filed your complaint under your theory of this case. You could have filed the same civil complaint in the year 2030, arguing about what happened in 2007 and 2008, and still been entitled to an injunction without any sort of time bar. Congress has not provided a time bar, Your Honor. But there are checks on this, and the reasonable likelihood of future violation is a check. And you don't have to stretch Section 2462 to apply the check. And as an example, there's the Jones case out of the District of Massachusetts that we cite in our opening and reply. So the answer to my question is yes, you could have brought it in 2030. Because Congress has said there's no time. The clock never ticks. Ultimately, it's Congress's prerogative to set forth a limitation period, Your Honor. But if the reasonable likelihood of future violations requirement functions as a built-in statute of limitations, the farther out that you go in the absence of intervening misconduct, the harder it is for the commission to establish the violation. But here, the passage of time alone isn't particularly probative. And just to back up, when a court is faced with a complaint like this, where we're trying to predict the future based on past violations, as one court put it, what you're trying to do is you're trying to separate out the likely recidivists from the reformed. And in this case, you can imagine the situation where the passage of time is probative, is relevant to that determination. But here, it's not. Again, recall, we didn't file a complaint because Mr. Gentile, we defer to the criminal authorities, and Mr. Gentile at the time was cooperating with the FBI. When that cooperation agreement broke down, we went in. So we don't think that there functionally was a meaningful delay. But doesn't the cooperation agreement break down when someone's not willing to re-opt a tolling agreement? Isn't that the time to bring the complaint? Well, I think the question of when the cooperation agreement broke down, I think there's some dispute between the parties what that truly means here. But the point is, you know, we had tolling agreements. I think at some point we were not able to negotiate another one. But, again, we're trying to protect the public against future violations. And so if the idea is that we should have done something different, we should have come into court and tried to, I don't know, file a complaint under seal or something like that, then what that means is, fine, it's too late for us to seek any monetary remedies from the past. It should not be too late to seek equitable remedies. Counsel, can you address, and I hope we'll hear from the other side as well, do we need to consider here the no penalties equity rule? That is, given that injunctive relief is expressly authorized by statute, why isn't this an action at law? Why do we even need to consider it? I mean, toll says you look not only to the nature of the relief, but to the source of authority for it. And if the source of authority is a statute, and the SEC is seeking this type of relief, why isn't this an action at law? Well, the injunctions here, Your Honor, I mean, they were, this is part of the original remedial scheme under the securities laws. They were available to us even before the law and equity emerged. The Exchange Act, the Court of Awareness back in 1934, this has always been understood to be an equitable remedy. If we got into, if we tried to go into court at the time and ask for instructions from a court of law, we would have, you know, there's no way that we would have been able to obtain that. All right. You've gone over and you've saved five minutes for rebuttal. Judge Greenberg, are you ready to move on, or do you have another question for this advocate? Okay. We'll hear you on rebuttal, Mr. Staroselsky. Let's hear from Mr. Ford. What about no penalties in equity? If injunctive relief is traditionally an equitable remedy and there's enough in footnote three of COCESH and certainly at oral argument to suggest that the court's concern there was that disgorgement was not authorized as an equitable remedy, isn't COCESH limited to the specific concerns as to disgorgement leaving intact the no penalties in equity rule? Your Honor, I would suggest we don't. And the reason why is because if you look at the decision in context, right, there's section 2A that the court starts this discussion. And in 2A, the court says, let's discuss what is a penalty under 2462, right? And it goes through the historical process of what constitutes a penalty, kind of a sanction that we put before the public law, and something that continues to affect. And it ends, right, by citing to the delegate, right, and saying that, you know, a penalty under 2462 is something that, you know, at least the API colonization does not have any, you know, does not try to restore the status quo remedy and labels independent belonging. But it talks about punishment dealing with pecuniary and corporal types of sanctions. And then it repeatedly refers to pecuniary relief. So why isn't COCESH by its terms really limited to the question of whether disgorgement is some kind of glorified restitution, what its source is, if it is a legitimate equitable remedy, and how it otherwise would fit into the scheme, leaving intact no penalties of equity for injunctions? Well, there is the word corporal, I find a little strange, but what I think they're saying is bottom, right? It's certainly not the first suggestion. It's referring to pecuniary or corporal, meaning either money or bodily, any sort of injunction controlling what one can do, right, which would be a form of corporal punishment, a kind of bottomless punishment to an individual. But, you know, even if, right, and I think the SEC suggested this in their brief, right, even if there's a determination that COCESH doesn't, you know, doesn't apply, right, the question, I mean, the question is, so is the injunction in this case a penalty? And that's still, I think that's still an issue. And we have, you know, two really good precedents from this circuit, right, in Rubella, where the circuit court there just assumed that non-pecuniary sanctions could be a penalty, right? In that case, the court found, well, there's a naturalization proceeding within the individual, a fraudulent information, and the revocation of that would simply make restoration of the statute public, right? But if the court there didn't think that 2462 applies to injunctions, it would have just said, right, this is a non-pecuniary penalty. Not if it wasn't presented as a question in the case. And there's a longstanding tradition of, again, no penalties at equity. If injunctions are equitable relief, why doesn't that, as a matter of law, foreclose affirming here? Well, if the injunction is in fact equitable, right, then I think there is, sort of, there's maybe a problem, but those types of injunctions are very specific. The injunction that restores the statute public, that compensates the victim, or that stops some sort of, you know, imminent or ongoing violation, right? And the Third Circuit, as well as the court, also addressed that. And that's another case where the court was very clear that you cannot get injunctive relief after five years, unless there was an ongoing violation. But doesn't that bring us back to the standard and what it means to be about to engage in a violation of the securities laws? Yeah. But you haven't pressed the reasonable likelihood, you haven't challenged that interpretation. Well, I think what's happening, Congress, I think, clearly, provisionally, tends to limit the amount of injunctive power that you can engage or about to engage, right? At some point along the line, right, that standard of, sort of, an imminent violation starts to get broad, right? And that's where you move into the reasonable likelihood. But the question of whether an individual is reasonably likely to violate the securities law, that's where it goes to whether that type of penalty, that type of sanction, is appropriate. It doesn't go to the court question of whether an injunction, a specific injunction is a penalty. It goes to what would have to be pleaded to go forward on a complaint, right? Right. You'd have to either plead that there was a current violation or that there was about to be a violation. And it's that standard. But you haven't pressed a sufficiency of the pleading type argument based on a different interpretation of about to engage in a violation. I'll pause it now. I may not be following the rest of this process, but if, I mean, I think the reason why I'm judging Eric is because he looks at the complaint, right, accepts everything as true, accepts his allegations of decade-old wrongful conduct, right, and then looks at, sort of, a spattering of, you know, Instagram posts, right, and he looks at that and he says, this complaint on its face, and after two attempts, or after two trials, this amended complaint does not allege that Mr. Frensfield engaged or about to engage in a security violation. And when you consider that in the context of this question of whether the injunction is in any part of the form, right, then, and by the way, in order to get this injunction, right, to get the SEC, the SEC would have to go through the forestry effect. But the forestry effect is on their face are intended to label the individual involved in it. They ask whether there was a prior violation, whether the individual committed the wrongfulness of his conduct, whether the individual gave assurances against eternal conduct, right? So, in many... You're saying to get an injunction, they would have to show all that? Those are the bonus... Well, I mean, the bonus of factors are, of course, a... It's a judicial gloss on the law, though. I mean, is it clear that those factors apply in every case? Because I'm conceiving of a potential scenario in the future where let's assume that rather than just some Instagram post, to use your phrase, let's assume that Mr. Gentile formed a new corporation. And that corporation had the purpose of pursuing a penny stock operation. And let's assume that there were other behaviors that were sort of consistent with a pump-and-dump scheme. Wouldn't the commission be within its rights to run into court and try to prevent him from getting that operation off the ground? I think absolutely, assuming that the facts that you are putting into this hypothetical suggest that he is on the verge of taking overt acts, right? Right. And what happened in 07-08 would potentially be evidence, or what was alleged to have happened in 07-08 would be competent evidence in that hearing on this new effort for the commission to get an injunction, would it not? Well, no. Why not? Well, there's no statute of limitations on the evidence, right? Well, there's no statute of limitations on the evidence, but the issue is not a pump-and-dump. There has never been any finding that Mr. Gentile is in any of this context. No, I know, and that's why in my hypothetical, I assume the commission would want to put before the court what it believes happened many years ago in order to establish precisely that finding. Well, I certainly think that that trial matter, I think that evidence of prior acts gets excluded, but if the FTC wants to run into court to say, you know, this individual has set up a shop, he's intercepted something else, it's clearly a pump-and-dump, he's been buying the stock off, right, and he's about to dump, and they run in, that is going to be sufficient on its face to get an injunction. The question of whether he did or did not do something 10 years ago is really, I think, irrelevant to that analysis, and I'm frankly surprised that the FTC included that type of information in any sort of application. Notice pleading is all that's required, and how far from Judge Hardiman's hypothetical really is the complaint here, because the allegations seem to be he engaged in violations of the securities laws, that's alleged, through this particular mechanism. He's not expressing remorse. He is thumbing his nose at the SEC and belittling their enforcement action, and he has announced plans to expand the same type of business that he was engaged in before. Why wouldn't that be enough, using the past conduct as evidence to support likelihood, if it's just a general reasonable likelihood standard? Yes? Right, and it does not engage. It's just a limited broker-dealer that accepts. It's a trading platform, right? It's not a penny stock. It has absolutely nothing to do with the allegations from three years prior, so that's why, as a factual matter, the allegations in the complaint now have the broker-dealer, which is a completely different route, and the posts, right, are not sufficient evidence to prove reasonable likelihood. Even if it is, what I should say, even if it is sufficient evidence to prove reasonable likelihood, which, judge whatever court, for example, is in possession, it still proves the penalty, because the injunction, right, if they go in, right, and say, did them, did wrong in the past, didn't admit to wrongdoing, the comment of these sort of summons in those authority groups making public statements that are against the government, that is exactly the type of evidence that is just supposed to preempt him as wrongdoer, and that preemption has real collateral consequences, which in many court cases, and I'll make sure that you've heard this in court, and take it to the collateral charges, becomes very difficult for people to operate in the financial legal community if there's an injunction imposed on them, and so the idea that an injunction sort of is only for the purpose of deterring them, right, then it has real-life collateral consequences in addition to exposing the individual to potential, you know, additional sanctions in the form of an intended proceeding if you guys violate the law in the future, so that means the validation of, you know... But those kinds of consequences, that's always the case, right, that there's going to be those collateral consequences, even if the remedy is one that's appropriate. Why isn't your argument susceptible, as the SEC suggests, to conflating whether an injunction is appropriate with the question of the nature of the injunction? All they want to do is get past a motion to dismiss, right? Well, right, but to... We're going to take that into part. You know, to get past the motion to dismiss, but in order to do that, and by the way, Judge Garrick was in the Eastern District in the case of Cohen, just recently addressed Cohen at dawn, where he said, and in that case also, like Judge Gennaris here, gave him the two opportunities, right? He said, come back and file an amended complaint, and really give me everything that you have, in both of these cases, you know, the dismissal or the amended complaint, and I think that's important, because the SEC has the opportunity to come forward with all of the facts, on notice that the complaint is susceptible to dismissal, at this stage, and in both of these instances, the SEC is not able to come forward to have it as a seeking injunction under the historic status quo, that it compensates the victim for stops in the Internet security provider, then it's not a remedial injunction, it's not remedial, and it's not doing one of those great things. But once you agree that that last point, that is an imminent violation, is a justification for moving forward with the complaint, a legitimate basis for injunction, then aren't we back to, what is the standard for imminence? What does it mean to be about to engage in a violation of the securities laws? If it's a general, if it's a broad brush reasonable likelihood, then there's a lot of different factors that could be taken into account, some of which may be, there may be fair inferences in the complaint, as currently pleaded, if it's truly imminent, that that seems like a higher standard than what our cases have suggested to date. So it's really about when the claim accrues, and the Instagram post isn't enough  But that's why I asked that hypothetical. I could envision steps that your client might take beyond the Instagram post that arguably would trigger the accrual of a claim. Right? Oh, I would agree with that, Your Honor. And I would also suggest that, you know, if this court were to sort of, you know, if the court were to sort of formulate a sort of test, some sort of standard, which is this kind of clarified process, look, if an injunction, you know, on the face of the complaint, right, tries to restore the status quo, tries to compensate or stop the imminent securities law violation, right, and if they plead that, then that's sufficient, right? District courts do this all the time. And I think what happened here was, you know, the evidence that you can bring to the Instagram post and you go to deal with a completely separate area of the securities law, that's just... That can't be a bridge that would render an untimely claim timely. That's the essence of your argument. Okay. Judge Greenberg, you have questions for Mr. Ford? No? Thank you. You had suggested that your argument really is about the about to engage, the imminence of it as fine. It just has to be within five years. But if you're about to engage in... If reasonable likelihood is enough, a reasonable likelihood that you're going to be committing a violation is fine within five years. That is, it's not punitive if it's brought within five years. Why does it become punitive if it's after five years? Okay. Reasonable likelihood. On its face, because it includes the modesty of factors, is the exclude declaration of wrongdoing. And that makes it penal. And the 11th Circuit in Graham, which is frankly a really interesting case because they're a little bit ahead of the curve when it comes down to Ford Kodak, it says that it's as glaringly as penal, right? It says the injunction is not, but then when it gets to the declaratory, the declaratory relief, it says, well, declaratory relief is absolutely penal because it's a public statement of wrongdoing. And so I can't understand how the court in Graham makes that assertion about declaratory relief, but then doesn't make the same assertion about injunctions, except, and here's someone who has it to point out, I actually did not fail to notice it before the briefing, but if you go back to each of the cases where an injunction is allowed to go forward, which is called on Graham to be a co-cash in the 10th Circuit as part of the decision of the secondary attorney, and in Tambo, if you go back to the District Court opinion on all four of those cases, they all involve facts where the wrongdoer, the security fraud, took place within five years. And in fact, the case in Coney Island, the individual was committing, he was continuing to commit the security violation at the time the complaint was filed. Now, the District Courts actually make these rulings on the fact that within the five years, it doesn't matter anyway, Circuit Courts admittedly go on and sort of use different language, but certainly the reason why this case is so different from all of the others is that here there's absolutely no dispute that the alleged conduct in eight years prior to filing ten and a half years has been allowed. But as a bottom line, you would have us set aside a no penalties at equity rule because it sounds like your argument is injunctions, even within the five year period, are punitive. And that that is permissible within the five years, so then we are revisiting the no penalties at equity rule. Right? I think that's right, although I don't want to suggest that every incumbent... I was going to say, it's not categorical, right? I mean, how about this? What if the prayer for relief in the Commission's complaint was we would like the court to enjoin Mr. Gentile from ever engaging in securities business with John Smith? Punitive or not? Assuming that it's based on past conduct... No, it's because John Smith, in my hypothetical, is sort of the public enemy number one in the penny stock business as far as the Commission is concerned. Without showing that if John Smith and my client were engaged or about to engage in long delay, that such conjunction would be punitive. Well, but that goes to what needs to be proved. I mean, I'm... I don't know. I just, I think under my hypothetical, I tried to give you a hypothetical that labeled not your client as a wrongdoer, but Smith as the wrongdoer, and is just telling your client to stay away from Smith because Smith is toxic in some way. I would respectfully suggest, Mr. Gentile, Your Honor, that that absolutely would work. If only John Smith is the wrongdoer, then the Commission should only be concerned with John Smith's conduct. My client has not been found to be... All right, so your answer is that it really is categorical, or maybe categorical, but it's always punitive. Well, I don't want to get out of the loop. Excuse me, because certainly some injunctions that people use in the case law suggest... Well, give us an example of one here vis-a-vis your client. What injunction could be entered against your client that's not punitive? That's pretty categorical. Sticking with the skiing motif? The defendant polluted these wetlands, right? And the court there said, we can compel you to go back and clean up these wetlands. Just make the wetlands how they were before you polluted them. And that is not a punitive injunction. But neither obey the law injunction, nor any kind of industry bar functions in that way, right? They're not restoring the status quo. So as a categorical matter, the kinds of injunctions that the SEC seeks, you're saying for those, they are categorically punitive, and your position is the SEC can seek those injunctions sometimes, and that the rule of no penalties at equity just doesn't apply in this context. The injunctions of the imminence of a security violation, I actually don't think are penalties. I don't think the court needs to file that. Or certainly, I guess, if they are penalties, I don't think that they're penalties, because what those injunctions do, they're actually attempting to restore the status quo. Meaning, if someone is about to violate the security clause, and the SEC tries to take a court, and you need an injunction, or a restraining order, all they're doing is trying to stop the security clause, and restore things as they were before the violation. All right, thank you, Mr. Ford. Let's hear a rebuttal from Mr. Staroselsky. Thank you, Your Honor. Just a few points in rebuttal. Number one, vanassia. The premise of vanassia is that injunctions are not imposed to punish. And every criticism that my friend just leveled at the injunctive belief that we see here was present in vanassia. That injunction did not compensate. It did not restore the status quo. It was not aimed at imminent violation. And yet, this court said it was required. The same was said and argued by your client and many other clients about disgorgement, and then Kokesh came along. Right, and the dispositive difference between disgorgement and injunction is that injunctions require a likelihood of future violations. If someone has money that they obtained unjustly, they can be made to return that money, regardless of whether they're going to do it again. And that just is not true of injunctions, really. Second, to Your Honor's accrual point, which I think is very important, I would point the court to the Johnson case from the D.C. Circuit in footnote seven. And the court said, if what you're doing is evaluating the defendant's current competence, it is not clear that there would be a date at which the claim were accrued. That goes back to the whole point of injunctive relief. It's kind of odd to talk about accrual because the point is to make a present analysis, a present inquiry into the defendant's likelihood of future violations. Third, on this solely in part language, you know, I talked about it in my opening, just one additional observation. It really has to be, the test has to be what the court's purpose is in ordering the remedy, not the incidental effect. The Supreme Court talked about that in Kokesh, but even taking a step back, if you adopt a solely effects test, please look at the Hudson decision that we cite in our page 25 arbitration. And what the court said there is, if you use the idea that a remedy that's solely, or a remedy has to be solely explained by some remedial purpose, if you don't have any limiting principles on that, then that's just an unworkable test because everything can be said. But aren't you just now asking us to disapprove of what the Supreme Court wrote in Kokesh? No, no, no. That word solely was in the opinion. The word solely, we want the court to give effect to what the court said in Kokesh. And what the court said is the second part of the sentence. The question is, can the sanction only be explained? Can it only be understood as also serving either retributive or deterrent purposes? Is there, and that's what the court said of discordant. You have certain discordant cases that sure, they serve compensatory goals, but you can't understand what the remedy is doing solely by reference to that test. You also have to refer to general deterrents. And that just is not true of injunctive relief. Next. Your Honor, Judge Krause asked about the imminent standard. I believe my friend conceded that, well, this I don't concede, that that is not this court's standard. It has not been challenged in this case. And Banowski didn't require an imminent violation. I think it also, I mean, the problem with it truly is that it would make cessation of violations of complete defense to injunctive relief, which we know from the Supreme Court cannot be the case. No, but it would give teeth to about to engage in securities violations. And to that extent, it seems that you and Mr. Ford are actually on the same page. Because if it is a violation that is about to be committed, then it seems that the SEC and the athletes here view it as purely remedial. That it is something that the SEC is well within its rights to seek as injunctive relief, as in not punitive if there is indeed a no penalties at equity rule still in place. It's certainly not punitive to, or try to prevent an emanation that is imminent. It is also not punitive to forestall a violation that is likely to occur. And basically what those securities laws recognize is that we shouldn't be put in a game of chicken with the defendant sort of waiting until a violation is imminent. The question is if they're alike. But isn't that what your statutory authorization says? Your Honor, so just to push back on the text of the statute, I want the court to ensure the statute as a whole. What the statute says is, first of all, we're authorized to investigate whether any person has violated the securities laws. If you look at the penny stock provision, which is only available in injunctive actions, it's available against any person who at the time of the alleged misconduct was participating in an offering of penny stock. So clearly Congress understands that injunctions based on past violations may be ordered. And it provided a likelihood of future misconduct. And if I could just close. The only question is, is that within five years or does it extend indefinitely beyond that? Congress can set out a limit and it has not. But if I could just, I'm sorry. Well, this seems to boil down to, you know, if the standard is the terms of your statutory authorization that is engaged in or about to engage violations of the securities laws, then you can do that within five years. And when you exceed that, perhaps that point becomes punitive. What's wrong with viewing it in those terms? Because as your honor pointed out, when questioning my friend, I don't think he had any coherent answer to this. It just doesn't make sense to say that enjoining someone within five years of violation from future violations should be permissible. And outside of five years, it's somehow forbidden. And in both cases, you're making a present assessment of the defendant's likelihood of future violations. If I could just make a report with one thought is just where we start. We're on a motion to dismiss all of the court's concerns about, you know, labeling the defendant a wrongdoer, collateral consequences, et cetera. They can be taken into account at the relief stage. And the court at that point can take everything into account in deciding whether to order injunctive relief. But the mere passage of time should not be understood to preclude us from even going forward in this case, particularly given the allegations of disinfo. All right. Well... It can be, Your Honor, it can be at the relief stage. It can be at the liability stage. And, again, just point the court with the court's indulgence just to a couple of cases where courts have done this the proper way. So in the Bartek decision that was affirmed by the Fifth Circuit, the district court there considered the case on summary judgment and said, look, there's a minimal likelihood of future violations. And taken against that is always negative consequences potentially to the defendant. So I don't think the claims are biased. But the court cited with approval the Quinlan decision that was affirmed by the Sixth Circuit. And there, the court engaged in that inquiry and it said, look, I recognize potential collateral consequences. I take those very seriously. But just given the facts of this case, I'm concerned about future violations. And so it rejected this 24 to 52 argument. And that is really all that we're asking for in this case. It's an opportunity to present our case to the district court and put it in a procedural posture where it can meaningfully assess our claims early. All right. Thank you, Mr. Staroselsky. Thank you, Mr. Ford. The case was well briefed and argued. The court will take the matter under advisement. Judge Greenberg will call you shortly to conference the case. All rise. The court stands in recess until 2 p.m.